IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY R. HAWES, | No. C 17-01402 WHA |
| Petitioner, | |
| v. | **AMENDED ORDER GRANTING MOTION TO DISMISS (CORRECTING OMISSION IN SECOND SENTENCE OF STATEMENT)** |
| DEBBIE ASUNCION, Warden, | |
| Respondent. | |

## INTRODUCTION

In this habeas case brought by a state prisoner under 28 U.S.C. § 2254, respondent has filed a motion to dismiss on the ground that the petition is barred by the statute of limitations. Petitioner opposes. For the reasons stated below, the motion is **GRANTED**.

## STATEMENT

On several occasions during the underlying criminal proceedings, the state trial court found petitioner Terry Hawes incompetent to stand trial and committed him to a state hospital to be involuntarily medicated. The saga began in 2005, three months after petitioner's arrest, when the trial court first suspended criminal proceedings and found petitioner incompetent to represent himself or cooperate with counsel. In early 2006, the trial court ordered petitioner moved to Atascadero State Hospital for the involuntary administration of antipsychotic medications. After approximately six weeks, in June 2006, the trial court found petitioner competent as long as he continued to take his medications (Pet. Exh. 1, 3 at 8–16).

In September 2006, petitioner discontinued his medications. The trial court again suspended proceedings based on concerns regarding petitioner's competency. Later that year, in December 2006, a jury found petitioner incompetent to stand trial and the trial court ordered petitioner committed to Atascadero State Hospital for the involuntary administration of psychiatric medications. Throughout 2007 and 2008, the trial court reinstated and suspended criminal proceedings multiple times based on findings regarding petitioner's competency (or lack thereof) to stand trial (Pet. Exh. 3 at 23–44).

A month after the reinstatement of criminal proceedings in April 2009, the trial court learned that petitioner again refused to take his medications and was decompensating. A May 2009 order directed petitioner's return to Atascadero and, in June 2009, the trial court had petitioner housed at Napa State Hospital to permit the involuntary administration of medication throughout his trial (Pet. Exh. 3 at 48–50; Pet. Exh. 21 at 573; Pet. Exh. 24).

Also in June 2009, a jury found petitioner guilty of rape by foreign object, in violation of Section 289(a)(1) of the California Penal Code, attempted forcible rape, in violation of Sections 261(a)(2) and 664) of the California Penal Code, criminal threats, in violation of Section 422 of the California Penal Code, and assault with intent to commit rape, in violation of Section 220 of the California Penal Code. That jury could not reach a verdict on a second count of rape by a foreign object (Resp. Exh. 1 at 1–3).

After a retrial in August 2009, a second jury found petitioner guilty of rape by a foreign object and found that he had inflicted great bodily injury in the commission of the crime. Although the trial court had acknowledged in the month prior to the second trial that petitioner was behaving differently than at the first trial, the judge found petitioner competent based on information received from Napa State Hospital. The trial court sentenced petitioner to 33 years and eight months to life in state prison (Resp. Exh. 1 at 1–3; Pet. Exh. 3 at 62–63; Pet. Exh. 28 at 1024–94).

In May 2010, petitioner began refusing to take medications and he was placed in the psychiatric hospital at Corcoran State Prison. He continued to refuse to take medications after being transferred to the psychiatric hospital at High Desert State Prison in June 2010. By July

2010, petitioner appeared acutely psychotic and delusional and involuntary medication was again initiated. An interim order for involuntary medication was issued later that month. In August 2010, an order was issued authorizing petitioner's involuntary medication for one year pursuant to *Keyhea v. Rushen*, 178 Cal. App. 3d 526 (1986) (Pet. Exh. 4 at 251–73).

In September 2011, the California Court of Appeal rejected all of petitioner's claims of trial error but found error in the sentencing on the counts of attempted forcible rape, criminal threats, and attempted forcible rape. The state appellate court also noted that the abstract of judgment erroneously reflected that two offenses were committed in 2006 instead of 2005, reversing the judgment and remanding for resentencing on the three counts. The California Supreme Court denied petitioner's state petition for a writ of habeas corpus in November 2011 and denied review of his direct appeal in December 2011 (Resp. Exh. 1 at 39–40; Resp. Exhs. 2–4).

In January 2012, the trial court resentenced petitioner to 27 years and eight months to life in state prison. Petitioner appealed the new sentence on the ground that the trial court failed to calculate and credit him for time served between the dates of his original sentencing and his resentencing. In July 2012, the trial court recalculated petitioner's custody credits and issued amended abstracts of judgment the same day. Petitioner did not appeal from the trial court's order recalculating his credits (Pet. Exh. 3 at 78–80; Pet. Exhs. 6–7).[1]

In March 2017, petitioner wrote a letter to Judge Thelton Henderson, which the court clerk construed as an effort to seek habeas relief pursuant to 28 U.S.C. § 2254. The clerk opened the instant action, notified petitioner that he needed to file a habeas petition to challenge his conviction and sentence, and enclosed a form habeas petition and application to proceed in forma pauperis. Later that year, an order dismissed the partially-completed petition with leave to amend, noting that petitioner had failed to set forth any claims in his most recent letter. Following the appointment of counsel to assist in presenting and pursuing his claims, petitioner

---

[1] In September 2012, unaware that the trial court had already recalculated petitioner's credits, the state appellate court reversed the judgment and remanded for a recalculation of petitioner's credits between the original sentencing date and the resentencing date. Petitioner did not seek review. On remand, the trial court noted that petitioner's custody credits had already been recalculated (Resp. Exhs. 6, 8; Pet. Exh. 3 at 81).

3

filed an amended habeas petition in May 2018. Respondent timely filed the instant motion to dismiss (Dkt. Nos. 1–7). This order follows full briefing.[2]

## ANALYSIS

The Antiterrorism and Effective Death Penalty Act ("AEDPA") imposes a statute of limitations on petitions for writ of habeas corpus filed by state prisoners. Ordinarily, petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the date on which the judgment became final after the conclusion of direct review or the time passed for seeking direct review. 28 U.S.C. § 2244(d)(1).

The parties agree that petitioner's conviction became final, at the latest, in November 2012. Absent tolling, petitioner had until November 2013 to file his federal habeas petition. The instant petition, however, was not filed until May 2018. Petitioner contends that due to mental illness the limitations period should be equitably tolled from November 2012 (when petitioner's conviction became final) to October 2017 (when the undersigned appointed counsel). Because petitioner did not file his amended habeas petition until May 2018, if petitioner was sufficiently competent to file his federal habeas petition for six months or more during the period of nearly five years between November 2012 and October 2017, then his petition must be dismissed as time-barred.

A petitioner is entitled to equitable tolling only if he shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citation and internal quotation marks omitted). A petitioner must show that "the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances made it impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotation marks and citations omitted). Eligibility for equitable tolling due to mental impairment requires a petitioner to meet a two-part test:

(1) *First*, a petitioner must show his mental impairment was an extraordinary circumstance beyond his control by demonstrating the impairment was so severe that either

---

[2] Petitioner's administrative motions to file under seal certain medical records (Dkt. Nos. 38, 45, 49) are **GRANTED**.

4

>                    (a)     petitioner was unable to rationally or factually to
>                            personally understand the need to timely file, or
>
>                    (b)     petitioner's mental state rendered him unable
>                            personally to prepare a habeas petition and effectuate
>                            its filing.
>
>            (2)     Second, the petitioner must show diligence in pursuing the
>                    claims to the extent he could understand them, but that the
>                    mental impairment made it impossible to meet the filing
>                    deadline under the totality of the circumstances, including
>                    reasonably available access to assistance.

*Bills v. Clark*, 628 F.3d 1092, 1099–1100 (9th Cir. 2010) (citations and footnote omitted).

Our court of appeals has stressed that the threshold necessary to trigger equitable tolling is very high, "lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1066 (9th Cir. 2002) (quoting United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000)). The test for mental impairment requires an evaluation of how a petitioner's mental impairment bore on his ability to file. "The relevant question is: Did the mental impairment cause an untimely filing?" *Bills*, 628 F.3d at 1100 n. 3 (citation omitted). For the reasons now discussed, this order concludes that petitioner's mental impairment did not make it impossible for him to timely file a habeas petition on his own during the limitations period.

It is undisputed and well documented that petitioner is severely mentally ill and has suffered from paranoid schizophrenia since at least 1987. But a showing of mental illness alone will not necessarily toll the limitations period because most mental illnesses are treatable, and with proper treatment many sufferers are capable of managing their own affairs. *See Miller v. Runyon*, 77 F.3d 189, 192 (7th Cir.), *cert. denied*, 519 U.S. 937 (1996). Pursuant to various court orders, petitioner has been regularly medicated throughout the relevant period. Importantly, petitioner has failed to present evidence showing that when he was medicated, he nevertheless suffered from symptoms which prevented him from timely filing the instant habeas petition.

Excluding a two-month period in 2013, petitioner has been *involuntarily* medicated between August 2010 and the present. During this period, and pursuant to *Keyhea v. Rushen*, 178 Cal. App. 3d 526 (1986), the California Department of Corrections and Rehabilitation ("CDCR") sought and obtained a court order from an administrative law judge authorizing the administration of long-term *involuntary* psychotropic medication to petitioner on the basis that

5

petitioner is gravely disabled and incompetent to refuse medication. As was true during the underlying criminal proceedings, the lack of forced medication resulted in petitioner's mental decompensation. Within weeks, petitioner was walking around his room naked and defecating in cell corners. CDCR quickly reconsidered and obtained a new order placing petitioner back on *involuntary* anti-psychotic medication (Pet. Exhs. 4, 6).

Despite petitioner's claims that medication did not cure his delusions and impeded his ability to think clearly, he has been able to lodge innumerable petitions with the district court over the past ten years. These filings certainly demonstrate that his mental illness did not prevent him from personally preparing a petition. Many of these letters and petitions were construed as civil rights actions in which petitioner challenged the forced administration of antipsychotic medications in prison (*e.g.*, Case No. 12-cv-2024 WHA, Case No. 13-cv-1740 WHA, Case No. 14-cv-5387 WHA, Case No. 14-cv-5576 WHA). While an order dismissing one of these actions described petitioner's letter as "rambling and incoherent," in each instance the undersigned could glean that petitioner challenged his *involuntary* medication. Noting that "a[n] incompetent individual shouldn't realize they have avenues to pursue in complaints against those keeping them incarcerated," in one such letter he requested copies of his previously-filed complaints to show his competence (Pet. Exh. 2 at 307).

Petitioner has also competently filed multiple petitions for habeas relief during the period for which he seeks equitable tolling. In March 2014, for example, petitioner filed a coherent petition for federal habeas relief in this district court. In that petition, he claimed that his trial rights were violated when, after finding him competent, the trial court later permitted him to represent himself at the preliminary hearing. He also challenged his arrest warrant. Acknowledging that he needed to timely file the petition, he requested "Your Honor hearing this writ please forgive any time lines on this writ as it took me a while to gather the evidence." A June 2014 order dismissed the petition because petitioner's application to proceed in forma pauperis did not include a certificate of funds signed and completed by a prison official, nor did it include a trust account statement. (Case No. 14-cv-1439 WHA, Dkt. Nos. 1, 6).

1 In June 2014, he filed a state habeas petition with the Marin County Superior Court. 2 Although the superior court judge who denied the petition noted that "[i]n many respects, 3 petitioner's complaints are simply incomprehensible," such as petitioner's claim of "seperation 4 of church and state violations," the superior court nevertheless determined that petitioner also 5 raised claims that the trial court had erroneously denied petitioner's request for a change of 6 venue and that the trial court had erred by permitting petitioner to represent himself. The 7 superior court denied the petition, finding that he failed to provide support for his claim 8 regarding the change of venue and that the trial court permitted petitioner to represent himself 9 for a period of ten days prior to trial (Dkt. No. 50-1 at 122–24).

10 In July 2014, petitioner filed another federal habeas petition in which argued that the 11 state trial court violated due process by allowing him to represent himself at his preliminary 12 hearing. He again asked the Court to "forgive any time lines on this writ." After an order to 13 show cause issued, petitioner wrote letters to the district court concerning his petition throughout 14 2014 and 2015. In these letters, he opposed the respondent's requests for extensions of time and 15 requested the appointment of counsel, an evidentiary hearing and for a copy of his habeas 16 petition. In other instances, he acknowledged that he understood the need to timely file his 17 federal habeas petition, arguing that "if the state claims time limits for this writ then they 18 shouldn't have taken 4 years to gibe me a trial(s)." A May 2016 order granted the respondent's 19 motion to dismiss the petition for failure to exhaust state judicial remedies (Case No. 14-cv-3189 20 WHA, Dkt. Nos. 1, 2, 7–10, 35).

21 And, in November 2016, petitioner filed another habeas petition in Marin County 22 Superior Court, which the superior court denied in February 2017 on the ground that the 23 allegations were conclusory and thus failed to state a prima facie case for relief (Pet. Exh. 9).

24 As our court of appeals has made clear in *Yow Ming Yeh v. Martel*, 751 F.3d 1075, 1078 25 (9th Cir. 2014) (citation omitted), such actions by petitioner belie any claim that his mental 26 illness was the but-for cause of his delay:

27 [The petitioner] repeatedly sought administrative and judicial
remedies, and throughout these proceedings showed an awareness
28 of basic legal concepts: he was able to make requests for assistance
from an appeals coordinator and an interpreter at his administrative

> hearings, and also to request assistance from a public defender after his conviction. Moreover, he was able to file a state habeas petition in three different California venues. These facts refute a claim of impairment so debilitating that one could not "rationally or factually" understand the meaning of a deadline.

So too here. In sum, given this history of medication, petitioner has failed to demonstrate that his mental illness was so severe that he did not understand the need to timely file his petition or was unable to personally prepare and file the petition. The letters, motions, and habeas petitions that he has filed over the years show that he is aware of basic legal concepts and able to effectuate filings on his own.

In opposing respondent's motion to dismiss, petitioner argues that even if the antipsychotic medications that he received "are somewhat effective at moderating his behavior . . . they do not cure him of his delusions" (Opp. at 7). In support, petitioner primarily relies on testimony from his competency jury trial in December 2006 — six years prior to the period for which he seeks equitable tolling. At that time, forensic psychologist Dr. Shawn Adaire Johnston testified that petitioner's mental illness "render[ed] him incapable of thinking rationally about his current legal situation or working with his attorney in preparing a rational defense" (Pet. Exh. 3 at 216). That same doctor, however, later testified that petitioner could be stabilized with medications (RT 222:28–223:5, 233:11–17):

> Defense Counsel:. Do you have an opinion as to any particular kind of treatment that can be rendered to Mr. Hawes to improve his psychological condition to a point where he would be able to assist, in a rational manner, his attorney in presenting a defense?
>
> Dr. Johnston: Antipsychotic medication. It worked before.
>
> . . .
>
> Prosecutor: Do you believe that Mr. Hawes, with the benefit of medication, can testify rationally?
>
> Dr. Johnston: The experience at Atascadero would indicate there's a very high probability that, after perhaps a month or two of appropriate antipsychotic medication, his delusions could be suppressed to the point where he would be capable of rational thought again, yes.

Next, petitioner points to CDCR's medical records. Specifically, he points to one portion of a "declaration in support of renewal of involuntary medication" written in 2012. There, when

8

asked to provide "[s]pecific acts (with approximate dates) in the recent past that show that the inmate is actively psychotic or delusional and not capable of consenting," the doctor explained that petitioner "said he would not sign a writ of habeus [*sic*] corpus prepared by his attorney because the patient did not write it. More to the point, he is unable to comprehend the nature of his major illness, and is unable to understand how the medication prevents him from exhibiting the conduct and behaviors which led to involuntary medications in the first place." Earlier in that same declaration, however, the doctor explained that while medicated, petitioner "exhibit[ed] hyperverbal periods and [was] very concrete in his thinking," but did not exhibit other symptoms such as hallucinations, paranoia, disorientation, or "severely impaired judgment" (Pet. Exh. 4 at 240–47).

Petitioner argues that his incapacity to provide informed consent to psychiatric medications demonstrates a lack of capacity to timely file the instant petition. To the contrary, petitioner's renewed *Keyhea* orders are based on determinations that "[b]ut for psychiatric medication, [petitioner] would revert to the behavior that was the basis for the prior order authorizing involuntary medication," and that "[petitioner] lacks insight regarding [his] need for psychiatric medication, such that it is unlikely that [petitioner] would be able to manage [his] own medication and treatment regiment" (Pet. Exh. 7 at 2). As set forth above, petitioner has demonstrated that despite his unwillingness to take medication when he is not forced to do so, he has been able to seek judicial remedies.

Furthermore, even if it is the case that at some point in 2012, petitioner was unable to comprehend the nature of his illness, it does not change the fact that petitioner was sufficiently competent to file his federal habeas petition for six months or more between then and October 2017. Respondent has pointed to various examples in petitioner's CDCR medical records that indicate such. In particular, the psychiatric records from August 2014 to May 2016 demonstrate that petitioner was not psychotic nor delusional during this period. None of the records from this time period states that petitioner was psychotic or delusional. Rather these reports state, "while medicated, [petitioner] demonstrates adequate skills to navigate his peers," (Mot. Exh. 4 at 1041). Later reports echo these sentiments stating that petitioner "demonstrates an ability to

9

advocate for himself by requesting help when needed and outlining arguments in a linear manner," displays "thought processes [that] were clear and linear," "presents as intelligent and reads his Bible regularly," and references letters he has written to judges in his legal case (*id.* at 964, 995, 1003, 1037, 1038). Accordingly, respondent has adequately demonstrated petitioner was sufficiently competent to file his federal habeas petition for six months or more during the period of nearly five years between November 2012 and October 2017, and the motion to dismiss is **GRANTED**.

Finally, petitioner's request for an evidentiary hearing is **DENIED**. Where, as here, the record is amply developed and indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record. *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010).

## CONCLUSION

For the reasons set forth above, respondent's motion to dismiss is **GRANTED**. Judgment will be entered separately.

**IT IS SO ORDERED.**

Dated: July 23, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE